On behalf of Mr. Hosey and Mr. Daniel A. Dowd, on behalf of the people, Mr. Richard S. Lewin. Gentlemen, are you both ready to proceed? Counsel, then, when you're ready. Good morning. May it please the Court. As the Court is aware, there are three different arguments raised in the briefs. Arguments 1 and 3 are fairly straightforward, and my plan this morning is to rest on the briefs as to those arguments. Unless, of course, the Court has any questions or would like me to talk about those arguments, in which case I am prepared and happy to do so. That means that what I'm planning to focus on are the constitutional challenges to the mandatory de facto life sentence found in argument 2. Now, there are some analytical distinctions between the facial challenge and the as-applied challenge that I will be discussing shortly. But both of those challenges share a fundamental logic, which is that the Illinois Constitution specifically says that when you set penalties or when you choose a sentence, you have to take not only proportionality in terms of seriousness of defense into account, but also the objective of restoring the offender to useful citizenship. Now, in the briefs, we call that the rehabilitation clause. Both of the challenges turn on that provision. The facial challenge is premised on the notion that the legislature has to consider rehabilitative potential when it sets the sentence. And so when it selects a de facto life sentence as a mandatory minimum, what it has done is it has said, we're not going to take that into account. We're not going to consider restoring this defendant to useful citizenship. Now, do you have any cases that apply this to somebody who's 18 as opposed to a juvenile? So Taylor, for example, considered whether or not the legislature had – this was the multiple murder case. And what they said is that the legislature did take it into account, but could reasonably conclude that if someone kills two people, that this person is beyond rehabilitation. And that case did not involve a juvenile. So let me ask you this. The challenge to the facially unconstitutionality of the statute, the defendant raising that challenge, must establish that the statute is unconstitutional under any possible set of facts, not just this case, correct? Correct. So how does that bear on your argument? Well, it's important, I think, to understand that when you're talking about a facial challenge and any set of facts, the question isn't, can you do this to any individual? The question is, can you apply the statute? And a perfect example of the difference is illustrated, and this isn't discussed in the briefs, but I'm sure the Court's familiar with the Aguilar-Burns cases involving aggravated unlawful use of a weapon. In Aguilar, essentially both cases involved a statute that said you can't carry a gun out in public. In Aguilar, the Court said that was unconstitutional. But that involved – the defendant there was someone who didn't have a criminal record in the past, and so they limited it in Aguilar just to those people. But then they reconsidered the question in Burns. Now, Burns involved a convicted felon, and we all know that you can ban gun possession for convicted felons. But the Court still said, even though the State or the legislature could have written a statute, and in fact has written a W felon statute that outlaws gun possession by convicted felons, the statute that they wrote just outlawed gun possession in public for anybody. And it's that that was unconstitutional. So when we're talking about under any set of facts, another way that you can look at it is it's also called a valid rule challenge. Essentially, you're ignoring the particular circumstances of this case, that case, or some other case, and you're just looking at what has the legislature done here. And is it okay for this – for the legislature to do this? Now, the absolute minimum sentence in this case, as I understand it, would have been 71 years? It would be 76 years, of which 71 would have to be served under truth in sentencing. So if the judge had given him the absolute minimum, and he didn't. Okay. He was a little bit behind there. If he would have given him the absolute minimum on every conviction, in essence, that still would have been a life sentence, wouldn't it? That's correct, Your Honor. And that's – and that's why we're raising – Well, de facto life. De facto life sentence. Correct. And that's why we're challenging the mandatory minimum sentence here as being de facto life. Essentially, the sentencing scheme took away any discretion the judge might otherwise have had to consider rehabilitating the family. But there was a combination of convictions here, correct, that had – that were required to be what we call mandatory ad acts, right? So there were two convictions. They were mandatorily consecutive, and each one had a minimum 25-year ad act. So if the legislature mandates that certain convictions should have a minimum sentence and be served consecutive and somebody committed a half-dozen offenses, still make the argument that the statutes would be unconstitutional? Any combination would be unconstitutional, no matter how many offenses you commit? So – I'm trying to carry your logic out to its logical extent. No, I understand, Your Honor. If we were looking at a situation where somebody had gone and committed one offense and then a week later committed a different offense, or if we're looking essentially at separate incidents, the argument might be different. But we're looking at just one incident here, and that's – Multiple convictions, and I think that's the point. This was not just a straight murder. This was a murder-armed robbery. That's correct, Your Honor. With a gun. Right. And, of course, that adds 50 years to the minimum sentence. I would point out, though, that in light of buffer, even if we're just looking at the murder conviction, that's a mandatory de facto life sentence of 45 years because it's more than 40 years. So even if we're only looking at at least at that conviction piecemeal, there's still a problem there. That said, when you have multiple convictions in the same incident, you can still look and say, is this producing a mandatory de facto life sentence? That's what the Illinois Supreme Court did in Reyes. So part of your argument is the sentencing scheme that applies to this case does not take into account any rehabilitative potential, correct? That's part of your argument? Yes. What about if somebody argued, how do we know the legislature didn't take this into consideration when they set these sentencing parameters? How do we know that? Well, the facial challenge relies on the premise that the legislature, there's nothing inherent about this offense that the legislature could reasonably conclude makes it impossible to rehabilitate the defendant. How do you know that? I'm sorry? How do you know that? Did they look at any legislative history or how do they know this? Where's the legislative intent? Any debate on the floor? I don't have any information about that. I'm sorry. But yet you're putting words in their mouth. You're saying they could not have considered this. What the legislature did was create a mandatory de facto life sentence. And so what I'm saying is that that legislative action necessarily takes rehabilitation off the table. So any time that they create a scheme that adds up to more than 40 years, it is facially unconstitutional. Is that your position? It depends on the offenses involved, Your Honor. It would not be facial. Well, how about this offense? In this offense, we're arguing that, yes, it is facially unconstitutional because it would not be reasonable to conclude that the nature of this offense is such that the ---- For what offense would it be constitutional, then? Double murder, habitual offenders, multiple child sexual assaults. The cases are cited in our opening brief where the Illinois Supreme Court has upheld mandatory life sentences in some circumstances. All of those circumstances are worse than the one involved here. By what measure? The double murder. That's two more than one. I might have overstated something there a second ago because we had with the recidivism cases, that's sort of a different consideration. With double murder, what we have is essentially the legislature saying that if you kill two people, you think that that would put you ---- That's a mandatory natural life. Right. Not de facto, natural life. Yes, but de facto life, mandatory, de facto life, du jour life, there's no difference. Either way, the defendant is not getting an opportunity for rehabilitation. Counsel, let me ask you this. The minimum penalty for first-degree murder committed with a firearm is 45 years, correct? Yes, Your Honor. This is not a life sentence for an adult, is it necessarily? It's a life sentence for a juvenile. That's what Buffer says. Then it must be a life sentence for an adult. But your client is not a juvenile. Right. Of course not, Your Honor. But if a 40-year sentence is a life sentence for a 17-year-old, then it has to also be a life sentence for an 18-year-old or a 30-year-old or a 40-year-old. Are you familiar with People v. Evans? It says a 45-year sentence is not a de facto life sentence. I'm not familiar with that off the top of my head. Does that predate Buffer or is it after Buffer? 2017 Illinois appellate. So that case came before Buffer. Buffer took us by surprise. In our opening brief, we assumed that a de facto life sentence would be significantly longer than 40 years. And when Buffer came down and said, no, 40 years, anything above that is a de facto life sentence, that was much lower than the courts had been holding. So Buffer changes that, Your Honor. But we don't just have a facial challenge here, and I do want to make sure that I spend a few minutes talking about our as-applied challenge. Yes, I think you should. And we still have the same thing where rehabilitative potential has to be taken into account. That's what the Illinois Constitution says. Now, we have a case here where the trial judge, after watching the trial, after reviewing the information, after hearing the arguments, starting sensing hearing, found that Dimitri has rehabilitative potential. But as a consequence of the mandatory minimum sentence of 71 to 76 years, the judge was unable to set a sentence that reflected that. So even if we can say that it's facially constitutional to make this offense, a murder with a firearm during a robbery, a mandatory life sentence, even if that's constitutional on its face, we have someone here who does have rehabilitative potential. Did the trial judge have sufficient information and an opportunity to really evaluate the defendant's as-applied challenge? Yes, Your Honor. And the reason we know that is the trial judge actually said, I would have given him a higher sentence if I thought he didn't have rehabilitative potential. Lower, you mean? No, no, a higher sentence. If I thought Dimitri didn't have rehabilitative potential, I would have given him a higher sentence. You agree that the only evidence that the court had in this case here was essentially the precinct's investigation report, the defendant's age? Because I'm really, my question is geared towards the information about the brain development of juveniles. Was that really aired out for the court? No, but this is a different case than Harris, which is I think the case that we'd really be worried about here. And there's essentially two reasons. The first reason is we do have a finding here by the trial judge that Dimitri has rehabilitative potential. We're not asking you to decide that. The trial judge has already decided that. We're asking you to just decide, okay, given that Dimitri has rehabilitative potential, what does that mean for this mandatory life sentence? But the other thing is that the arguments that we're making here is distinct from the one in Harris. And the distinction is this. In Harris, the defendant is saying, you know, I'm an emerging adult. I'm 18 to 21. The same exact things that led the U.S. Supreme Court to say you can't give a juvenile mandatory life sentence also apply to me. And now why is that specifically? Because we're talking about the law does acknowledge there's a difference between minors under 18 and generally people who are over 18. But if I understand what you're saying is that the same psychological consideration shouldn't be cut off at a certain age, correct? Just because somebody's 18 or 19, the same rationale should apply, right? Yes and no. Yes in the sense that that's our position, just overall. But no in the sense that that's not what our argument is here today. If we want to get Miller applied directly to Dimitri, then Harris says we have to develop a record saying how this brain science applies to him specifically. Well, then that's the question that Justice Bridges alluded to. Was there any – at the sentencing here, was there any evidence presented as to the particular psychological conditions or issues with this defendant? No, Your Honor, but it doesn't matter in this case because we are not asking you to apply Miller to an 18-year-old. What we're asking you to do is – look, we have more than age here. The trial judge decided that Dimitri had rehabilitative potential not only on his age, and there's a common sense element to that. We know an 18-year-old has greater prospects of rehabilitation than a 40-year-old. But it was also – is that – It is. Go ahead and finish your thought, please. It's also the fact that he had a very limiting criminal record. In fact, he only had one juvenile adjudication for a drug offense. And it was Dimitri – he took responsibility for what happened at sentencing. And all this was in front of the trial judge. And the trial judge said that Dimitri has rehabilitative potential. So that – that is the key point of our argument. We're not saying that Dimitri gets the benefit of Miller because he's 18 and an 18-year-old is like a 17-year-old. That would be in a post-conviction petition. What we're saying is that when we have a defendant who has rehabilitative potential and we have a statutory scheme that doesn't allow the trial judge to take that into account in a meaningful way, that violates the Rehabilitation Clause of the Illinois Constitution as applied to that defendant. No matter how many sentences are imposed consecutively, it doesn't matter in your argument, right? It might be a different case, Your Honor, if we had multiple incidents. We just have one incident. But we have multiple convictions. We have at least two convictions, correct? That's correct, Your Honor. Two convictions, one of which is under buffer a mandatory life sentence. But once again, look at Reyes. Reyes says when you're looking at whether the defendant has been given a mandatory life sentence, you take into account all the convictions that happened during that incident. Okay. You will have a chance for your rebuttal. Thank you, Your Honor. Counsel, are you ready to proceed? Good morning, Your Honors. May it please the Court, Counsel Richard London, behalf of the people of the State of Illinois. Your Honor, no court has held that mandatory add-ons for these offenses are unconstitutional. No court has held that mandatory consecutive sentences for these offenses are unconstitutional. No court has actually held that life sentences for mandatory add-ons are necessarily unconstitutional. And the trial judge here could have sentenced defendant to two life sentences in addition for mandatory add-ons because the mandatory add-ons are 25 years to life. Despite saying that Miller doesn't apply, I do think that defendant is, in essence, conflating Miller, talking about the whole concept of what buffer says and de facto add-on versus mandatory. The fact is that buffer applies to juveniles. Buffer does not apply to this defendant, period. Do you agree that the sentence imposed here forecloses any ability for rehabilitation? Arguably, yes. If you say rehabilitation, meaning getting out of jail and rehabilitating, doesn't necessarily. I mean, people are rehabilitated in prison. They find God. They do things, you know. But does a 105-year sentence, most of which needs to be served, is it likely to preclude this individual from getting out of jail? Probably. Do you agree that this is a de facto life sentence? Yeah. I mean, I guess we pretty much have to. I mean, 105 years, the majority of which has to be served. I think we have to acknowledge the obvious. It would be a de facto life sentence. Exactly. So then why is there an unconstitutional that is applied to him? Because it would be unconstitutional if it's applied to anyone. If you're 18, if you're 21, if you're 40, what if you have a 40-year-old that has no priors? And the case we cited, for example, people versus Decatur, which is very much on point, what if you had a Decatur situation, forgetting the age for the moment, where it was a bar fight, and as a result of the bar fight, an individual pulls out a gun, claims in self-defense, shoots someone, has no priors, obviously has a difference in age, and the judge says, you know, you're a pillar of the community, you screwed up here, I find that you have rehabilitation potential. The question that this panel has kind of asked before, does it apply differently to this particular defendant? It would be the same case anywhere. But his age here is different than someone who's 40 or 50, correct? Correct. I'm just saying that a 105-year sentence would be as applied to anyone. So his argument is, where is the rehabilitative potential? It was to be considered. How is that considered in this case? The courts have said consistently, rehabilitation, despite the rehabilitation clause, is not the most important factor in determining a sentence. The seriousness of the crime is. So in essence, we were to say, if there is a de facto life sentence, much less a mandatory life sentence, no minor can ever be ‑‑ sorry, no 18 years old or older can ever be sentenced. No court has ever found that. So we have a rehabilitation clause, but the courts have said consistently, that's not the most important factor. Let me ask you maybe perhaps a more subtle question, but how do we take this approach? If I were to ask you, did the legislature, in enacting these mandatory minimum sentences, did they consider rehabilitative potential when they did that? And would that then sort of undercut his argument? What do you say to that? I can't, again, speak to anything outside the record. I don't also have the transcripts of the hearings related to it. But I would say not only would the answer most likely be yes, but more importantly, the courts have said, in analyzing exactly those questions, have they or have they not considered rehabilitation, the courts have said, well, we presume they have, but more importantly, that isn't the most important factor. In this particular case, the trial judge very carefully looked at and addressed both the age and his lack of criminal history. The judge said, but for that, I would have said, you know, defend and acknowledge that. But for that, I would have sentenced him to even more. Counsel puts a lot of weight on the trial court and his statement. Can we also read into the trial court's decision not to impose 20 and 6 in finding that rehabilitation was not the end-all, be-all here? Unquestionably. What the judge here, this wasn't a case where the judge said, okay, I'm assessing these sentences for the murder and the armed robbery. And then one of the attorneys said, wait a second, Judge, you also have to add on the mandatory add-ons. And the judge said, oh, damn, you know, I didn't take that into account. The judge specifically said, I'm not giving him the minimums. Why? Because of his actions was equivalent to, you know, I'm sorry, it wasn't assassination. It was an execution. His actions were consistent with execution. And then the judge, you know, was aware, fully aware that he had to add the 50 years on, 25 for each. Despite that, he could have done what defendant alternative argument is asking is for this court to say, well, wait a second, we understand that there's mandatory add-ons, but we're asking you to take away the judge's discretion and sentence to 76 years, 71 of which would have to be served, but basically giving him the minimum for both murder and armed robbery. That's not what the judge attempted to accomplish here. We cited People v. Decatur, which is almost identical. If anything, Decatur potentially, arguably, deserved less because there was a, there was more of a claim that maybe it was self-defense because, again, it was a bar fight. There were none of those factors present here. Defendant claims that he was scared, that he was afraid. The facts aren't consistent with that. In addition to, you know, I mean, he acknowledges he had the gun in his hand, that a much smaller victim was unarmed. He shot him in the back of the head, so his back was turned. And then, of course, the actions he took afterwards. For someone who claims he never shot a gun, never was familiar with guns, it's pretty sophisticated in pouring bleach over his hands to get rid of gunshot residue, in shaving his head, in, you know, running. And, again, let's understand. Defendant, in their briefs, commented that, well, this is a drug deal. He was afraid. This was not a kilo of cocaine or heroin. This was not a Colombian drug cartel. This is the purchase of an ounce of marijuana. Could he have maybe, if we give him, you know, his due, could he have been afraid to run? Sure. Didn't the trial court struggle with the mandatory enhancement in light of his call for the legislator to reconsider the enhancement? I think many courts have struggled with that of recent vintage, especially since Miller. And the legislature has addressed that. The legislature has come out with two statutes. One that for minors, for juveniles, sorry, mixing up. For juveniles, that mandatory add-ons will now be discretionary. But neither of those two statutes apply to the defendant. And the second one is for 21 and under that there are, for non-murder, there's possibility of parole after 10 years for murder after 20. So the court, the legislature, has specifically listened to the concerns raised by both trial and reviewing courts and has addressed that. It doesn't apply to this defendant. And, I mean, it's a fact. There's nothing that really allows this court to say, darn, you know, I wish it did and let's remand back. At the time the defendant was sentenced, this was mandatory. We did find one case in answer to the question of does or should Miller apply to those above 17. And that was House. And we cited it and distinguished it. House 1 and 2.  The distinguishing, obviously, are it. Well, he was the lookout in House. Exactly. He was not the principal. He wasn't the principal, so, I mean, it's completely different. Two, again, it's aberrant. I mean, until other courts have done it, it's an aberrant case. It's the only case where a court has specifically said Miller applies. But where do you draw the line? But House was also a post-conviction petition. Yes, and it was, like, 20 years later. So, I mean, there were multiple exceptions. Yes, a defendant can on PC attempt to try to extend Miller to those older. That's not what we have here today. But, again, where do you draw the line? 25, 26, 30, and then you're going to start having, and this is not completely, are you going to start having arguments that at 39 or whatever, then your cognitive functions start decreasing, so we can't apply de facto or mandatory life sentences to older people because they don't know what they're doing. In any event, there was no full-blown hearing here on the defendant's cognitive. There certainly was not. There was no hearing. It wasn't a full-blown. There was no hearing. Which was here, right. So when we argue, when the people argue in our brief that it wasn't, the record wasn't fully developed, we're not suggesting the record wasn't developed as far as the PSI as to the ramifications of the defendant's age and history or lack thereof, criminal history or lack thereof. The court completely discussed that. We are strictly saying, yes, nothing relating to the workings of the mind and whether or not this should apply. I doubt very highly that this will be the first case that raises that in a PC. My guess is that will be done previously. Although, of course, at least to some extent, some of those questions have been answered by the two statutes. I'm sure defendants will say they haven't effectively because that's only juveniles and those 21 and under. So they'll argue that the 22 to 25 or 6. But again, that's not in front of this court. That's not something that this court needs to determine. Arguably, the judge's comments regarding rehabilitation is superfluous. Why? Because the judge did what he was supposed to do. The judge made comments on the seriousness of the offenses. The jury determined that the self-defense claim wasn't valid. The judge, obviously, in using the language of he executed the victim, certainly agreed that self-defense was not appropriate. The judge said, I'm applying that. I'm sentencing him to what I'm sentencing him for, for both the murder and the armed robbery. I would never sentence a defendant despite that to the minimum. There's nothing that suggests that facially or as applied is either unconstitutional or is inappropriate. Only if the defendant was a juvenile might that change. Defendant is not a juvenile. Until the U.S. or Illinois Supreme Court say we're applying Miller factors beyond, defendant has no relief under an unconstitutional. As far as abuse of discretion, again, the argument is the same. The judge did not abuse his discretion. He very carefully considered, and much more so than in most cases, laid out his concerns and considerations of age and prior criminal activity and then added the add-ons. Again, as your honors consistently ask, this wasn't one offense. It was two. He chose to either bring a gun, which the evidence seems to suggest, or at the very least grab the gun from the victim and utilize that despite being in a position where he didn't need to. Very briefly, as to whether or not he brought the gun, I would strongly suggest that an individual is not going to have, I'm not that familiar with guns, but it had three safeties on it and had to be cocked. You're not going to have something pointing towards your family jewels with all the safeties off, with the gun cocked, and the time frame of defendants, you know, will this happen all in seven or eight seconds, may I just finish the thought. Of course. It is just unrealistic. So to the extent that in reply defendant argues that we're conflating or we're confusing corroboration with inconsistencies, no. I think in our brief we very carefully show what does corroborate Chacon, the brother's testimony, and what conflicts with defendant. For these reasons, we would ask that you reject the defendant's suggestions. This case does not need to be remanded, and the sentence should not be reduced. Thank you. Counsel, do you wish to reply? The fundamental problem here is that there's just no way for the trial judge to consider rehabilitative potential. The rehabilitative potential of any defendant who committed these offenses or the rehabilitative potential that Dimitri has, and the trial judge found that Dimitri has. I disagree respectfully that the trial judge's comments about Dimitri's rehabilitative potential were surplusage. The trial judge said that to explain why Dimitri didn't get an even higher sentence than the one he did. That went into the trial court's decision-making process, and the trial court didn't have the opportunity to give Dimitri a sentence that allowed his restoration of useful citizenship. That's also an important point. Your bottom line is, even if you gave him the minimum, it's still de facto life. He's entitled to a new sentencing hearing. Is that your position? Yes. And the reason for it is because he has rehabilitative potential. The Illinois Constitution says that you need to take that into account. Now, it's true. Rehabilitation, restoration of useful citizenship, that does not have to be the overriding concern. But what the legislature has done by making this a mandatory de facto life sentence has said you can't consider it at all. It hasn't said this is a serious offense, you have to give him a serious sentence, but we're going to leave room for you, some room, to allow the possibility of restoration of useful citizenship. It's just taken that off the table entirely. And under the Illinois Constitution, you can't do that. You certainly can't do it as applied to a defendant like Dimitri, who does have rehabilitative potential. If the Court has no further questions? No. Any concluding remarks, then? We'd obviously be asking the Court to reverse Dimitri's conviction for the reasons given in Argument 1, to vacate his sentence and remand for a new sentencing hearing under Argument 2, or to reduce his sentence to the minimum or the alternative remand for resentencing under Argument 3. Very good. Thank you very much. Thank you all. We'll be in recess until the next hearing at 10.30.